No. 10,645.

THE STATE OF LOUISIANA AND CITY OF NEW ORLEANS VS. NEW ENGLAND MUTUAL INSURANCE COMPANY ET ALS.

Section 7 of Act 101, imposing licenses upon insurance companies, is graduated and is therefore constitutional.

Where a foreign insurance company complies with the laws of the State for doing business within the State, and specially authorizes an insurance agency to receive risks, issue and reissue policies, and, if in pursuance of said power delegated to such agency, it issues policies for said company, it is liable for the license tax provided for in Act 101 of 1886.

The power of the court to remit penalties imposed by law on delinquent tax payers is, to say the least, doubtful. But the State and city, under their own construction of the statute, having claimed these licenses from other persons than these defendants, and having only claimed from the latter after informed of their error by a decision of this court, defendants were not delinquent until informed by this suit of the claim.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

State and City vs. Insurance Co. et als.

*Charles Carroll* for Tax Collector, and *W. B. Sommerville*, Assistant City Attorney, and *Carleton Hunt*, City Attorney, for Plaintiffs and Appellees:

1. Section 7 of Act 101 of 1886, imposing licenses upon insurance companies, is graduated, and is therefore constitutional. State of Louisiana vs. Liverpool and London and Globe Ins. Co., 40 An. 463; 4 So. R. 504; State of Louisiana and City of New Orleans vs. Traders' Bank, 41 An. 329.

2. An agent authorized only to receive and transmit applications for insurance is not a "general agent." City of New Orleans vs. Rhenish Westphalian Lloyds, 31 An. 781; City vs. Va. F. and M. Ins. Co., 33 An. 10; Hine & Nicholls' New Digest of Ins. (q.) p. 29.

3. "The general agent of a company is one authorized to accept risks, settle the terms of insurance, and issue and renew policies." Ibid Sec. 10, p. 33; p. 27 (d)

4. "The possession of blank policies and renewal receipts, signed by the president and secretary, is evidence of such agency." Ibid., Sec. 10, p. 33; Sec. 12, p. 34.

5. Business transacted by and through a general agent is the business of the principal; and such principal is bound to pay a license to the State and city, based upon the amount of business done, where the law imposes a license for the privilege of doing such business.

*Harry H. Hall, Gus A. Breaux* and *F. C. Zacharie* for Defendants and Appellees:

1. A non-resident insurance company which permits risks to be solicited by an insurance agent in New Orleans, and issues its policy from its domicil, is not thereby conducting an insurance business in this city. 31 An. 781; 33 An. 12; 40 An. 175.

2. The business of insurance agency, as recognized in said decisions, is distinct from the business of insurance.

3. The court having by said decisions recognized the status of such insurance companies and insurance agencies; and such companies having, upon the faith of those decisions, permitted risks to be placed with them by such agencies, those decisions have become, as it were, a rule of property, and should not be disturbed. The question is *stare decisis*.

4. The reënactment by the Legislature of 1886 of a license law which embodies in substance the provisions of the law theretofore interpreted by the Supreme Court, indicates a concurrence of the legislative will in the construction thus given, and that construction must be read into the law. 13 An. 329, 583; 12 An. 175; 10 An. 273; 32 An. 690.

5. The license law interpreted by the Supreme Court and that of 1886 are the same in substance; and the facts of those cases are identical with the facts of this case. 31 An. 781; 33 An. 12; 40 An. 175; Acts 1886, p. 172.

6. Act 21 of 1877, requiring the appointment of a person on whom legal process may be served, imposes no further obligation, and the person thus appointed is not the company's agent for the purpose of transacting its business. Acts 1877, p. 24; 40 An. 175; 33 An. 12.

The opinion of the court was delivered by

McENERY, J. The State of Louisiana instituted suit by rule against defendants for the collection of State licenses for the years 1887 and 1888 under the provisions of Act 101 of 1886.

The section of law imposing the licenses is as follows:

" SECTION 7. *Be it further enacted, etc.*, That each and every insurance company (society), association, corporation or other organization or firm, or individual doing and conducting an insurance business of any kind, life, fire, marine, river, accident or other in this State, whether such company (society), association, corporation or other organization or firm, or individual is located or domiciled here or operating here through a branch department, resident board, local office, firm, company, corporation or agency of any kind whatsoever, shall pay a separate and distinct license on said business for each company represented, and said licenses shall be based on the gross annual amount of premiums on all risks located within the State or foreign · countries upon which no license has been paid therein as follows, to-wit: (Here follow fourteen graduated classes.)

` * * * * * * * *

" *Provided,* That no corporation not incorporated under the laws of the State, nor any foreign society, firm or partnership, shall do business in this State, except through an agent duly authorized and accredited for the purposes of said business, and for all purposes connected with licenses and taxation and service of process, said agent to be appointed by authentic act, and a certified copy of the act to be deposited in the office of the Secretary of State. Any person or firm who shall fill up or sign a policy or certificate of insurance on open marine or fire insurance policy, or otherwise issue by a corporation or association, or persons, not located or represented in this State by a legally authorized agent, shall be considered an agent of such corporation or person or association, and shall be liable for all licenses, taxes and penalties enforced by the provisions of this act upon such persons, corporation and association, as if represented by a legally appointed agent."

The City of New Orleans instituted a similar suit for city licenses for the years 1887, 1888 and 1889 under the provisions of Ordinances 2035, 2661 and 3375, Council Series.

It is admitted that these ordinances are, in all respects, similar to

Act 101 of 1886, except that they impose city instead of State licenses, and it was agreed that they need not be copied in the transcript of appeal.

By consent, the cases were transferred, consolidated and tried together.

There was judgment in favor of the State and of the city as prayed for, except as to the following named companies, against which a judgment of non-suit was entered:

American Mutual Accidental Association, Anglo-Nevada Assurance Corporation of California, California Insurance Company of San Francisco, Mannheim Marine Insurance Company of Germany, Marine Insurance Company (limited) of London, Mutual Benefit Life Association of New York, Marine Insurance Company of Liverpool, St. Paul Fire and Marine Insurance Company of St. Paul, and Union Insurance Company of Philadelphia.

From the judgment herein the following named defendants have appealed:

| Name of Company. | Judgm't for State for 1887, 1888. | Judgm't for City, 1887, 1888 and 1889 |
| --- | --- | --- |
| American Fire Insurance Company, Philadelphia... | $850 00 | $1,000 00 |
| American Life Insurance Company, Philadelphia... | 300 00 | 600 00 |
| Continental Fire Insurance Company, New York..... | 750 00 | 1,100 00 |
| Equitable Life Assurance Society, New York........... | 1,150 00 | 2,150 00 |
| Exchange Fire and Marine Insurance Company, New York  ........ .......... ....... ................. .......... | .......... | 300 00 |
| Fire Assurance Company of London.................. ....... | 600 00 | 600 00 |
| Fidelity and Casualty Insurance Company, New York ........ ...... ......... ........ ................ ... | 600 00 | 900 00 |
| German-American Insurance Company, New York.. | 600 00 | 1,100 00 |
| Germania Fire Insurance Company of New York .... | · 300 00 | 600 00 |
| Greenwich Insurance Company of New York........... | 150 00 | · 450 00 |
| Guardian Fire and Life Assurance Company of London ............... ...................................... ...... | 600 00 | 950 00 |
| Hartford Fire Insurance Company of Hartford....... | 750 00 | 1,200 00 |
| Home Insurance of New York .............. ................ | 750 00 | 1,150 00 |
| Lancashire Insurance Company of Manchester ....... | 650 00 | 1,000 00 |
| Liberty Insurance Company of New York ................ | 150 00 | 450 00 |
| Life Insurance Company of Virginia, Richmond ... . | 300 00 | 650 00 |
| Lion Fire Insurance Company, London......... . . ........ | 600 00 | 950 00 |
| London and Lancashire Fire Insurance Company, Liverpool ......... .. ................. .. .. ................ ....... | 700 00 | 1,150 00 |
| Merchants' Insurance Company, Newark.................. | 350 00 | 1,000 00 |
| Niagara Fire Insurance Company, New York...... ..... | 650 00 | 950 00 |
| Northern Assurance Company of London.................. | 650 00 | 1,000 00 |
| North British and Mercantile Insurance Company, London................. ............................................ | 700 00 | 1,050 00 |
| Queen Insurance Company, Liverpool....... ............... | 800 00 | 1,300 00 |
| Royal Insurance Company, Liverpool........................ | 850 00 | 1,450 00 |
| Scottish Union and National Insurance Company, Edinburgh........... .. ........................... ......... ........... | 700 00 | 1,050 00 |
| Springfield Fire and Marine Insurance Company, Massachusetts.................... ... .. ................ ..... .... | 700 00 | 1,050 0G |
| Sun Fire Office Insurance Company, London.. ......... | 700 00 | 1,100 00 |
| United Life and Accident Association, New York.... | 300 00 | 600 00 |
| Western Assurance Insurance Company, Toronto... | 700 00 | 1,150 00 |

The following named defendants, against whom judgment was rendered, have acquiesced therein, have not appealed therefrom,

and have paid or compromised their licenses to the State and city for the years 1887, 1888, 1889 and 1890:

Ætna Fire Insurance Company, Hartford; American Central Fire Insurance Company, St. Louis; Imperial Fire Insurance Company, London; American Steam Boiler Insurance Company, Employers Liability Insurance Company, Louisville Underwriters Insurance Company, Union Marine Insurance Company, London Assurance Corporation, London; Thames and Mersey Marine Insurance Company, Liverpool; Universal Marine Insurance Company, London; Commercial Insurance Company, California; Commercial Union Assurance Company, London; Farragut Fire Insurance Company, New York; General Marine Insurance Company, Dresden; Hamburgh-Bremen Insurance Company of Hamburg, Insurance Company of North America, Philadelphia; International Marine Insurance Company, Liverpool; Manchester Fire Insurance Company, Manchester; Manhattan Life Insurance Company, New York; Mutual Life Insurance Company, New York; New England Mutual Life Insurance Company, Boston; New York Underwriters' Agency Company, New York; Norwich Union Fire Insurance Society of Norwich, England; Orient Insurance Company, Hartford; Phenix Insurance Company, Brooklyn; Phœnix Insurance Company, Hartford; Phœnix Assurance Company, London; Providence and Washington Insurance Company, Providence; Reliance Marine Insurance Company, Liverpool; Security Insurance Company, New Haven; Sea Insurance Company, Liverpool; Westchester Fire Insurance Company, New York; Williamsburg City Fire Insurance Company, New Haven.

---

The defendants plead a general denial, and specially:

### I.

That they are not doing or conducting insurance business of any kind in this State.

### II.

That they are foreign companies domiciled in different States, and that they issue policies from their own domicils; are not carrying on business here, have no agents here, and only agree to accept risks placed for them by some person, usually an insurance agent or broker who is residing here.

### III.

That the parties who have been designated by them, under Act 21 of 1877, as their agent were so designated solely for the purpose of service of legal process, and are in no other sense agents of the defendants, but that said persons carry on a business of insurance agency, negotiating insurance upon commission, and procuring authority from defendants and other foreign companies to place risks for them; and that they solicit the patronage of persons desiring to insure; that they are under no obligations to solicit for any particular company, each company agreeing to accept such risks as they may place for them; that this business of insurance agency is conducted in the interest of the aforesaid agencies and in their own behalf, they renting their own offices and defraying all expenses out of their own means; that the policies issued by these companies are so issued by them at the several places where they are domiciled, and that the defendants have and keep no office in this State.

### IV.

That Act 101 of 1886 is unconstitutional, and that the license tax imposed under said section is not graduated.

---

The answer of defendants seems to be framed in accordance with the decisions of this court in the cases of N. O. vs. Rhenish, etc., 31 An. 781; N. O. vs. Virginia, 33 An. 12; Stockton vs. Firemen's Ins. Co., 33 An. 578, and State vs. Woods, 40 An. 175, upon which they rely.

The substance of the opinion in these several cases is summed up in the syllabus of the brief of defendants, as follows:.

"A non-resident insurance company which permits risks to be solicited by an insurance agent in New Orleans, and issues its policies from its domicil, is not thereby conducting an insurance business in said city. 31 An. 781; 33 An. 12; 40 An. 175. The business of insurance agency, as recognized in said decisions, is distinct from the business of insurance. That Act 21 of 1877, requiring the appointment of a person on whom legal process may be served imposes no further obligation, and the person thus appointed is not the company's agent."

In the cases referred to by the defendants, the fact found by the court was that the foreign companies did not do business within the limits of the State of Louisiana, and were therefore not liable to a

license tax. They issued policies directly from their domicils when they were submitted to them by insurance agents in this State. The agents were only insurance brokers, having no authority to transact business for the company so as to instantly bind them. The facts in the instant cases are materially different. Here, as in the cases quoted by the defendants, the question is, as was propounded in the case of N. O. vs. Virginia, 33 An. 12: "Do these companies do an insurance business in the city of New Orleans?"

In the above cited case, this court said: "The case would be different if a foreign company had established its own agent here, such agent not carrying on a public insurance agency, but conducting under special authority the business of his foreign principal, and confining himself thereto, instead of. falling under the distinctive class or calling of insurance agency, doing the general and indiscriminate business distinguishing that occupation, acting as the special agent and representative of a particular company. Under that condition, the company which would be doing a business here through its own agent, whose solicitation of business would be that of his principal, would be liable to the payment of a license tax, while such individual agent could not be regarded as falling within the distinctive class of insurance agency."

The language quoted, from the facts in the case and the issues involved, applies to a foreign insurance company which accepts risks through a general insurance agency, which has no special authority from it, and which places policies of insurance and reinsurance as suits themselves. "They are not confined in their business exclusively to any one company, and the business which they transact with the various insurance companies is *their business.*"

But there is no law which prevents a foreign company from constituting one of these general insurance agencies its agent to transact its business. In this it would, within the meaning of the above quoted case, confine itself to the business of its principal, and would, notwithstanding it solicits policies for other companies, become the special agent and representative of the company appointing it.

It is admitted that the defendant companies have their home offices in the places designated in the plaintiffs' rules and the reports of the Secretary of State; that they are represented in the city of New Orleans by the persons designated as agents in the rules filed herein, for the purposes specified in the commission and under the

Act of 1877; that they have collected and forwarded to their principals the respective amounts of the premiums or risks placed in New Orleans, as are set forth in plaintiffs' rules.

There is a great deal of testimony as to the manner in which these general insurance agents transact the business of their principals, the payment of expenses by them, their independence of their principals in placing policies, and many other matters which interest the principal and agent, and which may be matters of agreement between them. Such facts as detailed by these general agents no doubt lead them to believe that they determine the question at issue as they did in the cases referred to by them, when there was no special authority delegated to them to transact the business of their principals.

But in addition to these facts, there are others which distinguish this case from the cases relied upon by the defendants. Had they then existed there can be no question that the fact of the defendants doing business in the city of New Orleans would have been affirmed, and as indicated in the State vs. Virginia Fire and Marine Ins. Co.

The controlling facts here are that the defendants, under existing laws of several States, by a resolution of their board of directors, declared that "the president and secretary shall, under the supervision of and direction of the executive committee, manage and conduct the general business of the company, appoint general agents, local agents and clerks, define their powers and duties, and remove the same as the interest of the company in their judgment demands. They are also authorized and empowered to appoint attorneys in the several States to accept process of law in conformity to the laws of said States, and in other respects to comply with the laws of such States in order to transact business therein. They shall have power to execute contracts of insurance on behalf of the company on recent losses and claims against the company. They shall have cognizance of and determine in behalf of the company such other matters as may arise in the conduct of the legitimate business of the company under the charter."

In pursuance of the above resolution the defendants appointed their agents under Act 21 of 1877 to accept service of legal pro and in addition issued a commission to them as follows:

State and City vs. Insurance Co. et als.

## AGENCY COMMISSION.

Be it known that —— ——, of New Orleans and the county of Orleans and State of Louisiana, is appointed, and by these presents duly constituted agent of the —— —— Insurance Company during the pleasure of the company, with full power *to receive* proposals for insurance against loss and damage by fire in New Orleans and vicinity; *to fix rates of premiums; to receive money for the same, and to countersign, issue, renew, and consent to the transfer of policies of insurance* signed by the president and secretary of said —— —— Insurance Company, subject to the rules and regulations of said company, and to such instructions as may from time to time be given by its officers.

In witness whereof said —— —— Insurance Company have caused their corporate seals to be affixed to these presents and to be signed by their president and attested by the secretary in the City of New York this 23d day of August, A. D. 1888.

—— ——, Secretary.

—— ——, President.

Act 76 of 1886 prohibits any foreign insurance company from doing business in this State without first depositing $25,000 with the Treasurer of the State, to secure its policy holders in this State. The defendants have made this deposit.

As a condition precedent also to doing business in this State foreign insurance companies are required by Act 21 of 1871 to appoint an agent upon whom legal service can be made.

Both of these conditions, prescribed by said acts, have been complied with, accompanied by the express declarations of the defendants that it was their intention to do business within the State.

Having complied with all legal requirements for doing business in the State of Louisiana, have the defendants, through their agents, done any act to carry out that intention?·

The power of attorney to the agents in this State is full, ample and complete, to that extent that the agent here is vested with the same authority " to receive proposals for insurance against loss and damage by fire in New Orleans and vicinity; to fix rates of premiums, to receive money for the same, and to countersign, issue, renew and consent to the transfer of policies of insurance signed by the president and secretary of the company, subject to the rules

and regulations of said company," as the foreign company would have if its domicil was permanently established in this city.

The agent here for his principal has received proposals for insurance, has fixed the rate of premiums and received money for the same, issued and reissued or renewed policies, and consented to their transfer. The contract of insurance in this State is made as complete and binding by the consent of the agent as though the company had made it at its domicil through its officers there.

It is urged by the defendants that the home company reserves the right to vacate or cancel policies when submitted to them by their agents abroad. The usual course is to notify the agents here to cancel. But this is a right which the foreign company claims to exercise over policies issued at its domicil, and a similar privilege is claimed by companies located and domiciled in New Orleans. If the foreign company were domiciled in New Orleans, it would claim the same privilege, as it forms a part of their by-laws. This fact therefore is not important in determining the fact whether the company has done through their agents insurance business in the city of New Orleans.

If these defendants did not intend to do business in the State of Louisiana, there was no occasion for them to comply with the several acts of the Legislature as a condition upon which they could transact an insurance business. There is nothing in the statutes which prevents a resident of this State from insuring directly with the company, or which prevents the company from issuing from its domicil policies to applicants here.

The defendants have complied with the laws for doing business in Louisiana, and have accompanied their compliance with the express declaration that it was their intention to do business in New Orleans and vicinity. To carry out this intention they have appointed agents with as much authority to transact business as the defendants themslves could do if personally present. That they have done business here to the full extent of the powers conferred, the evidence is conclusive. If these defendants were not transacting business in New Orleans, there was no reason why their agents should observe the requirements of Act No. 341 of 1855, Section 5 of which requires that any person acting as an agent of an insurance company not incorporated by the laws of this State, and *doing fire, marine or river insurance business* within the city of New Orleans, shall, in the manner provided for home companies in Section 4 of the act, publish a

NEW ORLEANS, JANUARY, 1891.            143

State and City vs. Insurance Co. et als.

statement of the business of the company. This act has been complied with by the defendants through their agents.

In addition to the above facts the defendants, alleging that they were doing business in the city of New Orleans, signed an agreement fixing rates of premiums, etc., and prohibiting *their agents* from dividing premiums with the assured.

The agents who represent the defendants make this distinction between their principals and outside companies, whose policies they receive when offered to them. In the first they place the risks immediately and bind their principals; and in the latter they submit the applications to the foreign company they do not represent for final action and acceptance. This, in itself, makes the specified difference between the instant cases and the cases relied upon by the defendants.

The constitutionality of Act 101 of 1886 has been determined. State of La. vs. L. L. Globe Ins. Co. 40 An. 463; State of La. and City of N. O. vs. The Traders' Bank, 41 An. 329.

Judgment affirmed.

ON APPLICATION FOR REHEARING.

FENNER, J. We are impressed with the strong equity of defendants' application for a remission of the heavy penalties included in the judgment. If we were convinced of our power to do so, we might at least reduce them to the rate of legal interest; but under the unambiguous provisions of the law, we do not feel authorized to grant such relief during the period of the defendants' actual delinquency in the payment of their licenses. But we think defendants can not be held to have been delinquent except from the date of the filing of this suit—June 5, 1888.

Prior to that time the State and city, under their own construction of Section 7 of Act 101 of 1886, claimed that the licenses were due, not by these defendants, but by the individual agents, against whom they prosecuted legal proceedings for their collection.

That suit was inconsistent with a claim for the licenses from these defendants, and during its pendency they were not in default for non-payment of claims which the State and city themselves urged were due, not by them, but by third persons.

Our judgment rejecting the demand against the agents only became final on February 27, 1888; and it was only thereafter, to-wit:

on June 5, 1888, that for the first time defendants were notified of the State and city's change of position and of their claim that defendants owed licenses.   During that period the defendants were excused from payment by the act of the State and city themselves, and we have no doubt of our authority to remit the penalties during that period.   Cooley on Taxation, pp. 456, 459; Litchfield vs. County, 101 U. S. 773.

As both parties have filed briefs on this application, it does not seem neccessary to postpone our decision.

It is therefore ordered and decreed that our former decree herein be amended by disallowing so much of interest or penalties allowed in the judgment appealed from as run prior to June 5, 1888; and, as thus amended, that our former decree be maintained.